Garland, J.
This suit was instituted to recover a tract of land, which the plaintiff claims under one Isaac Brown, to whom he pretends that it was confirmed by the United States, as a donation claim, by virtue of a settlement. It is described as having a front of sixteen acres on the Mississippi river, by a depth of forty, bounded on the upper side by a claim confirmed to Leoret. The petition contains the allegations usual in an action of this kind, and prays for a judgment for the 640 acres of land, and for damages. The defendant, after a general denial, states that he purchased the land he possesses of Joseph Purl, who warranted his title to be a good one. He prays, that his warrantor may be cited to defend him, but does not, in case of eviction, ask for a judgment against him. He also pleads the prescription of ten and twenty years in himself, and those under whom he claims. Purl filed his answer, in which he admits his sale and warranty to the defendant. He avers that he purchased the land of Pierre Leglise, late of the parish of Avoyelles, by an authentic act, in which his vendor warranted his title. He states that Leglise is dead, and that his heirs are absentees, not represented in the State. He prays that a curator, ad hoc, may be appointed to represent them, on whom service may be made, which was ordered; and he asks for a judgment against them, in case the defendant be evicted, and judgment obtained against him. He denies the allegations in the petition, and also pleads the prescription of ten years. The curator, ad hoc, of Leglise’s heirs denies everything generally, and especially any warranty in the deed to Purl.
The plaintiff offered in evidence an abstract of a certificate of confirmation, in the “St. Helena Land District, No. 28, in favor *29 of Isaac Brown, for a section of land, situated in the parish of Feliciana. His own settlement claim.” Dated 28th day of October, 1833. He also gave in evidence the copy of a certificate of confirmation of the above date, in which the Register and Receiver certify, in pursuance of an act of Congress, passed on the 8th of May, 1822, for the purpose of adjusting claims to land in the district east of the island of New Orleans, that Isaac Brown is entitled to a section of land in the parish of Feliciana, on which he resides, as an actual settler reported among the settlement claims. Several copies of an order of survey signed by the Register and Receiver, were then received, in which they state, that the improvement of Brown is on the east bank of the Mississippi, in Feliciana, and that as there is no confliction of boundary or conditional line, between Brown and any individual, it is ordered that the land be surveyed by beginning at the line of Leoret, on the river, thence running down sixteen acres for a front, and back forty acres, thence parallel with the front line up to Leoret’s lower back corner, thence with his line to the place of beginning.
Under this order, a United States surveyor, named Dawson, in April, 1832, undertook to locate the claim ; and, instead of following the directions given, he took an opposite course, and beginning at Leoret’s lower corner on the river, ran out a line 122 chains and 73 links. For a back line, he ran on one course 36 chains, on another 34 chains, and then on a course different from the upper line 62 chains to the river, and with it to the place of beginning. In this way a front of nearly twenty-five acres was obtained on the river, instead of sixteen. None of the lines are parallel, though expressly ordered to be so. The superficial quantity is 636rW acres; and the plat presents a figure of five unequal sides, showing a variety of angles, instead of a parallelogram. This survey was approved by Surveyor General Williams, and appears to have been made in the manner it was, for the purpose of not conflicting with a claim in the rear, although the order of survey says that no confliction of boundary appears. The plaintiff then offered a sale from one Isaac Brown to himself, passed before a notary in the parish of West Feliciana, although both parties reside in Pointc Coupée, and as the evidence shows, at or about the same place. This sale is for $1000 cash. In de *30 scribing the land, the sale states, that it “ was confirmed to said Isaac Brown by act of Congress as an actual settler, proof of which is recorded at the St. Helena Land Office.”
The plaintiff then offered Dawson, the surveyor, and a witness named Cook, to prove that the defendant was in possession of land covered by the Brown claim. These witnesses say, that they know where the lower corner of Leoret’s tract is, and that the defendant has improved belowt it. Dawson says, that nearly the whole front of the Brown claim is in the possession of the defendant. He describes it in his testimony as having a front of sixteen acres, although his survey makes it much more. He states that he surveyed the claims of both Leoret and Brown in the years 1827 and 1832, for the heirs of Leglise, conforming to tile orders of survey, there being a change of location in the second survey. For this change we find no authority. When he first surveyed the Brown tract, a person named Miles was on it, claiming it to be public land. He says further, that he never saw Brown.. He knew Leglise when he lived on the river, previous to 1820. The defendant resides on the Leoret place, but cultivates the other. Purl lived there before him.
The defendant produced a sale from Purl to himself, for 815 acres ofland, bounded above by the land of Noles, and below by other lands sold by Purl. The consideration was $12,225, part in cash; and the balance payable at different terms. The deed contains a clause of warranty. A sale from Leglise to Purl was also given in evidence, dated June 13th, 1835, and it also contains a general warranty. In this sale it is stated, that Leglise purchased in 1830 or 1831, by a notarial act, of the heirs of Marie Louise Colin, a free woman of color. No other deed, or written evidence of title, was produced by the defendant. The parol evideuce they introduced shows, that Marie Louise, a free woman of color,-was living on the land, or near it, as far back as 1809 or 1810. Leglise exercised acts of ownership over it. A witness who says he has known that neighborhood since the year 1806, states that he knew Isaac Brown in 1809, and had heard of him several years previously. “He was then called old Mr. Brown.” He was killed between the years 1809 and 1812. He had two sons and one daughter, who left the place after their father’s death. He says, *31 the old man may have had a son named Isaac ; but that both the sons were boys smaller than witness, who, in 1809, was eighteen years old. He never heard of any Isaac Brown in that neighborhood, other than the old man just mentioned, who lived near where defendant’s house now stands. After Brown’s death some persons named Ores well, lived in the house for a year, more or less; they went away, and the house was then pulled down. The evidence of this witness is sustained in its important features, by others who have long been acquainted with the land and people near it. A witness named Barker says, that he has known the Isaac Brown, who is represented to have been the plaintiff’s vendor, for about thirty years, and that they were boys together. Brown had no fixed place of residence, nor any family ; nor did he ever settle on any land so far as this witness knows. The vendor of the plaintiff is shown to have been apparently about forty years of age, in 1842.
Upon this testimony, the court below gave a judgment for the plaintiff, and ordered him to be put into possession, which order it appears has been executed. It was further decreed, that the demands of Rea against Purl, in warranty, and of the latter against Leglise’s heirs, was not established ; and that as to them there should be a judgment of nonsuit. From this judgment Purl has appealed, and cited all the other parties as ajjpellees.
It will be recollected, that in the sale to the plaintiff it is stated, that his vendor was confirmed as an actual settler on the land, proof of which is of record in the Land Office. The certificate to Isaac Brown is for his own settlement claim. The law under which the certificate was issued, requires, to obtain such a confirmation, that there must be proof of actual habitation and cultivation, on or before the 15th of April, 1813. 1 Land Laws, 758-9, 823, § 3. At that time, the evidence shows, that the vendor of the plaintiff was about twelve years of age, and it is difficult to believe that he was such an inhabitant and cultivator as the law contemplated. There cannot be a doubt, that the Isaac Brown who did actually live on the land in controversy, was dead as far back as 1812. It is not shown that the plaintiff’s vendor is a son, or even a relative of that person. Had this vendor settled on the land and cultivated it previous to 1813, it is strange that no wit *32 ness should have known it. The plaintiff’s counsel did not venture to put a question to any witness, relative to the settlement of his vendor on the premises. Upon a review of-all the testimony, we are constrained to believe, that the vendor of the plaintiff is not the same Isaac Brown, to whom the confirmation was made by the United States, and consequently could not convey a title.
Paterson, for the plaintiff
Boyle and Ratliff, for the appellant.
The omission of the plaintiff to give any testimony as to the indentity of his vendor is very remarkable, as he had notice that it would be contested, the cause having been once continued on the defendant’s affidavit of his belief that he could produce such evidence. Interrogatories tending to elicit the facts were served on the plaintiff’s counsel, to which he did not append any questions calculated to explain the great doubts existing.
The judgment of the District Court, is, therefore, annulled and reversed, and judgment rendered in favor of the defendants as in case of nonsuit; the plaintiff paying the costs in both courts.